UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORGE SIERRA,<br><br>　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | Case No. 4:24-cv-00202-DCN<br>　　　　4:21-cr-00103-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Jorge Sierra's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Petition"). Dkt. 1; CR-103, Dkt. 399.[1] The Government opposes Sierra's Petition. Dkt. 13.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Sierra's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. 2255.

---

[1] In this Order, "CR-103" is used when citing to the criminal record in Case No. 4:21-cr-00103-DCN; all other references are to the instant civil case.

## II. BACKGROUND

On April 14, 2021, a federal grand jury indicted Sierra on one count of Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. CR-103, Dkt. 27.

On March 9, 2022, the Government filed a Superseding Information, which solely charged Sierra with Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. CR-013, Dkt. 220.

On March 31, 2022, Sierra pled guilty to the Superseding Information. CR-103, Dkt. 258. On May 31, 2023, the Court sentenced Sierra to 77 months of imprisonment with five years of supervised release to follow. CR-103, Dkt. 394.

On April 18, 2024, Sierra timely filed his Petition. Dkt. 1. Therein, Sierra alleges a litany of claims. *Id.* In an effort to articulate and consolidate the claims, the Government has grouped the allegations into three categories: (1) ineffective counsel claims against attorney Richard Hearn; (2) one ineffective counsel claim against attorney John Cutler, and (3) alleged misconduct by the Government. Dkt. 13, at 3. In total there are eleven claims. *Id.* The Court finds how the Government organized Sierra's claims is accurate, and it will analyze the Petition in the same manner.

## III. LEGAL STANDARD

28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence

was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

///

///

MEMORANDUM DECISION AND ORDER - 3

# IV. ANALYSIS

## A. Trial Counsel Errors (Attorneys Richard Hearn and John Cutler)

The Court notes at the outset that Sierra's plea agreement contained an express provision whereby Sierra waived his right to appeal or collaterally attack his sentence under § 2255. CR-103, Dkt. 247, at 7–8. Nevertheless, the plea agreement carved out an exception for ineffective assistance of counsel claims. *Id*. at 8. Thus, Sierra is not procedurally barred from alleging ineffective assistance of counsel claims. However, he is procedurally barred from bringing forth claims of misconduct by the Government—more on that later.

As noted, Sierra brings a litany of claims against his former attorneys, but mainly against attorney Richard Hearn.[2]

As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[3]

In order to successfully claim ineffective assistance of counsel, Sierra must satisfy the two-part *Strickland* test. Sierra must show that: (1) his counsel's performance was

---

[2] The Court appointed Hearn on April 20, 2021. CR-103, Dkt. 61. Hearn represented Sierra for most of his criminal case. Prior to sentencing, Hearn asked to withdraw. CR-103, Dkt. 322. After a hearing, the Court granted Hearn's Motion and appointed John Cutler on September 26, 2022. CR-103, Dkt. 334.

[3] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 363 (*See also*, *Strickland*, 466 U.S. at 688). Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

To satisfy the second prong, the petitioner must show he was prejudiced by his counsel's errors. A petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

Sierra alleges seven instances of ineffective assistance of counsel—six against attorney Richard Hearn and one against attorney John Cutler. The claims against Hearn are as follows: (1) Hearn had "sidebar conversations" with the Government to cover up constitutional violations by federal agents; (2) Hearn coerced Sierra into making an involuntary plea agreement; (3) Hearn failed to provide discovery to Sierra in a timely manner; (4) Hearn refused to meet with protentional witnesses and failed to obtain a private investigator to investigate defenses; (5) Hearn failed to object to the racial make-up of the grand jury; and (6) Hearn—and possibly Cutler (it is unclear)—failed to appeal Sierra's Miranda violation. *See Generally* Dkt. 1. The sole claim against Cutler is that he failed to make sentencing arguments for a guideline departure pursuant to United States Sentencing

Guidelines: §§ 4A1.3; 5K2.13.; 5H1.4.; and 5K2.0. *Id.*

1. *"Sidebar" Conversations with Government to Cover Up Constitutional Violations by Federal Agents*

Sierra first alleges Hearn was ineffective for having "sidebar" conversations with the Government to cover up Constitutional Violations by Federal Agents. Dkt. 1, at 2. As pointed out by both Hearn and the Government, conversations between opposing counsel are necessary in plea negotiations (and in general). Dkt. 13, at 8; Dkt. 13-1, at 2. Furthermore, Sierra lacks sufficient evidence to support this claim.[4] As a result, Sierra fails to show how these alleged conversations fell below a standard of reasonableness or how Hearn's behavior prejudiced him in anyway. Thus, this allegation fails to meet the *Strickland* standard.

2. *Threatening Sierra into Making Involuntary Plea Agreement*

Sierra next argues Hearn coerced him into making an involuntary plea agreement. Dkt. 1, at 4. Sierra asserts, again without any evidence, that there were conversations between himself and Hearn on this topic. And again, Sierra points to video evidence in the way of court footage—specifically the footage of his difficulty in answering during his change of plea.[5] Dkt. 19, at 3. The purported video evidence here fails to support Sierra's allegations for the same reasons as outlined. Specifically, it is questionable whether such

---

[4] Sierra claims there is video evidence of conversations between him and Hearn supporting the notion that unethical "sidebar" conversations took place. Dkt. 19, at 2. However, Sierra does not provide this footage for the Court, nor did he ask for discovery under the rules governing § 2255 motions.

[5] The Court would note that while there are cameras in most courtrooms in the federal courthouse, they are rarely turned on. In fact, the cameras are used to broadcast hearings, not to record hearings. Thus, there is no video footage of Sierra's change of plea hearing.

footage exists and, *even if it did,* it is not in the current record and cannot be considered.

Sierra's remaining arguments in support of his second claim also fail to meet the *Strickland* standard. Sierra's support for this claim stemming from his conversations with Hearn amount to hearsay and cannot be considered. Furthermore, Sierra had ample opportunity to make this claim known both to the Court and to his subsequent attorney, John Cutler. In other words, if Sierra had any reservations about the plea agreement, he should have expressed those concerns to the Court (or his subsequent attorney). There is no indication he did either of those things. In fact, quite the opposite. At his change of plea hearing, Sierra specifically indicated that he was "knowing[ly] and voluntarily agreeing to all terms in the plea agreement." CR-103, Dkt. 401, at 21.[6] Sierra also affirmed that nobody "induce[d] [him] to plead guilty." *Id*. In sum, Sierra did not represent he had any reservations about entering into a plea agreement with the Government. Now, declarations in open court are not an insurmountable barrier to any claim, however, they "carry a strong presumption of verity . . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Sierra has not presented any compelling evidence that would counter his affirmations in open court that he entered into the plea agreement in this case of his own violation. Accordingly, Sierra fails to meet *Strickland* on this claim.

*3.   Failure to Provide Discovery to Petitioner in Timely Manner*

Sierra next asserts that Hearn was ineffective in failing to provide discovery to him in a timely manner. Dkt. 1, at 4. Sierra again supports this argument with claims of video

---

[6] Sierra also stated that he had been adequately represented by Hearn and that it was his "own independent decision to plead guilty." CR-103, Dkt. 401, at 8.

evidence that is: (1) not conclusively known to exist, and (2) not in the record. *Id.* at 5. Sierra's arguments are mostly conclusory in nature. Some arguments also amount to hearsay. When viewed in tandem with Hearn's declaration as well as the work done in the case by Hearn, Hearn's conduct with regard to this claim did not fall below the standard of objective reasonableness, thus failing to meet *Strickland*.

    4.  *Refusal to Meet with Potential Witnesses or Obtain a Private Investigator*

Sierra next claims that Hearn's representation was ineffective because he failed to meet with potential witnesses or hire a private investigator. *See Generally* Dkt. 1; Dkt. 19, at 5–9. Sierra's arguments in his initial motion on these topics are vague and conclusory. Sierra does provide more specificity in his response, such as providing an example of a potential witness that could have rebutted the Government's witnesses in this case. Dkt. 19, at 6.

Nonetheless, Sierra fails to illustrate how these more specific examples of alleged ineffective assistance fall below a standard of objective reasonableness or how they prejudiced him in any way. Again, under the second prong of *Strickland*, the Petitioner must show that the "result of the proceedings would have been different" but for the prejudicial representation of counsel. *Strickland*, 466 U.S. at 694. Thus, even assuming some failure on Hearn's part, there is no indication the outcome of this case would have been any different. Even Sierra's responses to the Government's conclusions are vague. For example, Sierra summarily argues that if Hearn would have looked into his suggestions, such an investigation (by Hearn) would "have played a huge role in jury trial." Dkt. 19, at 7. Lest it go unmentioned, there was no jury trial in this case. But more to the

point, Sierra's self-serving suppositions about what *might* have occurred cannot rise to the level of ineffective assistance of counsel. Given the vague and conclusory nature of these arguments, this claim fails to meet *Strickland*.

   5. *Failure to Object to the Racial Make-Up of the Grand Jury*

Sierra claims Hearn's representation fell below the *Strickland* standard of reasonableness when Hearn failed to file a motion arguing a lack of fairness due to no Hispanic individuals being on the grand jury. Dkt. 1, at 17; Dkt. 13, at 15.

Sierra argues that President Trump, starting in 2016, has influenced Americans to think that "Hispanic people are Murderers, Drug Dealers, and Criminals . . ." Dkt. 19, at 9. Ultimately, Sierra argues that this notion "clearly proves statistically that the petitioner had underrepresentation in equal protections." *Id.*

Challenges to a fair cross section of a jury fall under the equal protection clause. To establish a prima facie equal protection case a party must: "(1) establish that the group, of which the appellant is a member, is 'one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied;' (2) prove the degree of underrepresentation 'by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time;' and (3) discriminatory intent." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1166–67 (9th Cir. 2014) (quoting *Castaneda v. Partida*, 430 U.S. 482, at 494 (1977).)

Sierra states he is Hispanic, but he has not argued, let alone shown, any of the other elements to persuasively make a claim of discrimination. Sierra's personal opinion does not prove a statistical likelihood of underrepresentation. Furthermore, Sierra makes no

argument alleging discriminatory intent—which is the most significant factor in equal protection claims in the Ninth Circuit. *See Hernandez-Estrada*, 749 F.3d at 1167. Accordingly, Sierra's argument fails to meet *Strickland*.

6. *Failure to Appeal Petitioner's Miranda Violation*

Sierra next argues that Hearn and possibly Cutler (it is unclear if Cutler is included in this allegation) was ineffective in failing to appeal alleged Miranda violations by DEA agents. Dkt. 1, at 11.

After his arrest, Sierra was interviewed by DEA agents. After being advised of his *Miranda* rights, Sierra elected to speak to the agents and admitted to engaging in criminal conduct. Hearn filed a Motion to Suppress Sierra's statements from that interview. CR-103, Dkt. 136. After withdrawing the motion, refiling the motion, and then engaging in negotiations with the Government, Hearn again withdrew the motion as the Government stipulated that it would not use the statements from the interview in this case.

Sierra seems to be alleging that Hearn was ineffective for not continuing with the Motion to Suppress. But Hearn's negotiations with the Government achieved the same practical result: the incriminating statements would not be presented in this case. Achieving such a result appears more like effective lawyering as opposed to lawyering falling below a standard of objective reasonableness. *Strickland*, 466 U.S. at 687–88. Accordingly, Sierra's argument fails to meet *Strickland*.

7. *Failure to Make Sentencing Arguments for a Guideline Departure Pursuant to United States Sentencing Guidelines: §§ 4A1.3; 5K2.13.; 5H1.4; and § 5K2.0. (Attorney John Cutler)*

Sierra's final claim with regard to ineffective assistance of counsel is that Attorney Cutler was ineffective in failing to argue for a departure from the sentencing guidelines pursuant to guidelines §§ 4A1.3[7]; 5K2.13[8]; 5H1.4[9]; and § 5K2.0.[10] Dkt. 1, at 7–10. Sierra throws the proverbial "kitchen sink" in this claim by pointing to several possible mitigating factors that could have supported a departure from the relevant sentencing guidelines. *Id.* None of these claims include sufficient support to show that Cutler's representation fell below a standard of objective reasonableness.

Many of Sierra's citations are inapplicable to this case. For example, he faults Cutler for not addressing his physical condition. But he does not allege he had any physical ailments or other health problems. Thus, it is understandable why Cutler did not address this departure.

And on the other hand, Cutler *did* specifically argue some of the departures Sierra alleges he did not. For example, Sierra cites his mental health. Cutler specifically addressed this in his sentencing memorandum. CR-103, Dkt. 389, at 3.

In sum, Cutler acted effectively and strategically in filing a sentencing memorandum that requested a variance, downward departure and self-surrender, and he presented a thorough argument pursuant to the 18 U.S.C. § 3553(a) factors at sentencing. Sierra has not shown that Cutler's failure to make certain *other* arguments fell below the

---

[7] Departures based on Inadequacy of Criminal History Category.

[8] Diminished Capacity.

[9] Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addition etc.

[10] Grounds for Departure.

standard of care, or that he was otherwise prejudiced. Accordingly, these claims fail to meet Strickland.

## B. Alleged Prosecutorial Misconduct

Sierra additionally alleges misconduct by the prosecution. As noted above, Sierra is procedurally barred from bringing claims such as these given signed a valid waiver as part of his plea agreement. CR-103, Dkt. 247, at 7–8.

Courts enforce waiver's contained in plea agreements if: (1) the waiver is express, and (2) the petitioner made it knowingly and voluntarily. *U.S. v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). As the Court already reviewed, Sierra repeatedly affirmed at his change of plea hearing that he was entering into the plea agreement of his own free will and that he understood all its provisions. And specifically, Sierra acknowledged he was aware the plea agreement waived certain rights—including the right to appeal or otherwise collaterally attack his case. CR-103, Dkt. 401, at 20.

Sierra has not presented any evidence that would call into question the efficacy or validity of his waiver. In like manner, Sierra has not cast doubt on his prior affirmations acknowledging the limited nature of any post-conviction proceedings.

In sum, all claims alleging prosecutorial misconduct are dismissed and procedurally improper having been waived by Sierra.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of

appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Sierra is procedurally barred from raising certain claims (due to his plea agreement) and his other claims lack merit. No reasonable jurist would disagree with this assessment. Therefore, should Sierra wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

For all the reasons stated above, the Court finds no reason to vacate or remand Sierra's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an

MEMORANDUM DECISION AND ORDER - 13

evidentiary hearing on the same. Thus, the Petition is DENIED.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Sierra's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 Dkt. 1; CR-103, Dkt. 399 is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Sierra is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Sierra files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: May 16, 2025

David C. Nye
Chief U.S. District Court Judge